UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

In Re: ) No. CV-09-0393-LRS
)
THE CATHOLIC BISHOP OF )
SPOKANE a/k/a THE CATHOLIC ) **MEMORANDUM OPINION**
DIOCESE OF SPOKANE, )
)
Debtor. )
)
)
)

Pursuant to 28 U.S.C. §158(a), the Debtor (Diocese) appeals several orders entered by the U.S. Bankruptcy Court for the Eastern District of Washington on December 18, 2009 (Ct. Rec. 2392, 2393 and 2394) in 04-08822-PCW-11), in conjunction with and following an oral ruling on December 17.[1] No party has requested oral argument and this court finds the appeal may be resolved based on the briefs which have been filed. Fed. Bank. R. Proc. 8012.

**I. BACKGROUND**

On October 21, 2009, the Debtor filed an Ex Parte Motion To Seal with the bankruptcy court (Ct. Rec. 2342 in 04-08822-PCW-11) seeking an order authorizing the Debtor to file a motion to enforce the Second Amended Plan of

---

[1] Debtor identified two other orders in its "Notice Of Appeal" (Ct. Rec. 1), Ct. Rec. 2390 and 2391. Ct. Rec. 2392 and 2393, however, represent "corrected" images of Ct. Rec. 2390 and 2391 and therefore, are the same as Ct. Rec. 2390 and 2391.

**MEMORANDUM OPINION-**     1

Reorganization (Plan) which had been confirmed on April 24, 2007.  Pursuant to the Plan, a procedure was established for the allowance and disallowance of "Future Tort Claims" by a "Tort Claims Reviewer" (TCR).  In its Ex Parte Motion To Seal, the Debtor alleged that certain Future Tort Claims had been allowed in violation of the Plan.  Because of confidentiality provisions contained in the Plan, the Debtor filed an Ex Parte Motion To Seal in order to submit evidence to the bankruptcy court regarding what it considered improper allowance of certain claims by the TCR.

Following a hearing on November 4, 2009, the bankruptcy court issued a scheduling order (Ct. Rec. 2363 in 04-08822-PCW-11) establishing a briefing schedule "on the limited issue of the binding nature of decisions made by the Tort Claims Reviewer" and set a telephonic hearing on December 14, 2009 for argument to be presented regarding the same.  Although the bankruptcy judge made an oral ruling at the conclusion of the December 14 hearing, the recording equipment was not working at the time and therefore, on December 17, the judge held another telephonic hearing at which she again delivered her oral ruling.  The bankruptcy judge found the TCR's duty is to investigate, evaluate and determine whether Future Tort Claims should be allowed and in performing that duty, she does not act outside the scope of her authority ("*ultra vires*").  The bankruptcy judge found there was no provision in the Plan which allowed review of the TCR's determinations regarding the merits of the claims.  On December 18, the bankruptcy court issued an order denying as moot the Debtor's Ex Parte Motion To Seal (Ct. Rec. 2394 in 04-08822-PCW-11), and an order granting the Plan Trustee's motion to authorize the trustee to distribute funds on any claim allowed by the TCR (Ct. Rec. 2392 in 04-08822-PCW-11).

On appeal, Debtor alleges the bankruptcy court erred in ruling "as a matter of law that it had no authority to review the TCR's decisions to determine whether they were *ultra vires* or an abuse of discretion," and erred in denying the Debtor's

**MEMORANDUM OPINION-    2**

motion to seal as moot, thereby depriving the Debtor of an opportunity to present evidence in conjunction with an anticipated motion to enforce the plan.

## II. DISCUSSION

A district court reviews a bankruptcy court's legal conclusions *de novo*. *Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997).

### A. What decisions of the TCR are subject to review by the bankruptcy court?

Article 11 of the Second Amended Plan of Reorganization concerns the treatment of tort claims.  Section 11.11 provides in relevant part:

> The TCR shall notify the Tort Claimant in writing of the TCR's determination with respect to the Tort Claimant's Claim, which determination shall be final unless the Tort Claimant makes a timely request for reconsideration and shall not be subject to any appeal. . . .  No other person may request reconsideration or submit additional evidence or argument.  The TCR shall notify the Tort Claimant in writing of the TCR's determination of such request for reconsideration.  The TCR's determination of such request for reconsideration shall be final and not subject to any appeal.

The Plan Trustee must pay Future Tort Claims within 30 days after they are finally determined by the TCR.  (Section 11.7.2.1).

Article 20 of the Plan concerns the "Effects Of Confirmation."  Section 20.2 states the TCR and other parties have no liability to any other party in interest "except for their willful misconduct."  In the order confirming the Plan, Section 20.2 was amended such that in addition to liability for willful misconduct, the TCR and other parties could also be liable for "*ultra vires*" acts.  (Ct. Rec. 1921 in 04-08822-PCW-11 at Paragraph H.6).

Article 23 concerns the bankruptcy court's "Retention Of Jurisdiction."  Section 23.1 provides in relevant part:

> Notwithstanding entry of the Confirmation Order, the

**MEMORANDUM OPINION-    3**

> Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are implemented until entry of an order concluding and terminating the Case. Without limiting the generality of the foregoing, the Court shall retain jurisdiction of the following contested matters and proceedings.
>
> . . . .
>
> 23.1.2 Re-examining any Claim that has been Allowed, **except Tort Claims Allowed under Article 11**.
>
> 23.1.3 Hearing and determining any objection to a Claim, **except a Tort Claim.**

(Emphasis added).

According to the Debtor, on October 12, 2009, the TCR allowed six Future Tort Claims that did not meet the minimum requirements of the Plan. It is the Debtor's assertion that the TCR had no authority to allow these claims and that in doing so, "abused the discretion afforded by the Plan, or acted in an *ultra vires* manner." (Debtor's "Brief On Appeal," Ct. Rec. 6 at p. 10). According to the Debtor, although the TCR has discretion and authority to allow claims in accordance with the terms of the Plan, it has no discretion and authority to allow claims in contravention of the Plan. The Debtor states the purpose of its Ex Parte Motion To Seal was to enable it to present evidence and identify claims to the bankruptcy court which the TCR allowed in contravention of the Plan, "that is, claims that **the TCR had no authority and no discretion to allow in the first place**." (*Id.*, emphasis in text).

While the Plan expressly subjects the TCR to liability for willful misconduct and *ultra vires* acts, it does not say anything about liability for "abuse of discretion," or anything about permitting review of the TCR's claim

///
///
///
///
///

**MEMORANDUM OPINION-      4**

determinations for an "abuse of discretion."[2]  Because the Plan clearly gives the TCR discretion to determine the merits of tort claims and states those determinations are final and not appealable, it is not apparent how those determinations could be reviewed for an abuse of the exercise of such discretion. The Debtor acknowledges "the TCR has the discretion and authority to allow claims *in accordance with* the terms of the Plan, and that such awards are final and not appealable." (Debtor's "Brief On Appeal," Ct. Rec. 6 at p. 10)(italicized words in text).  If a TCR does not have discretion to allow a claim, but allows it anyway, that is not an "abuse of discretion," but an "*ultra vires*" act which is an act that is outside the scope of her authority and for which she cannot exercise any discretion in the first instance.  An "abuse of discretion" occurs where a party, although lawfully authorized to exercise discretion, abuses that discretion in some manner.  There is, however, no question about the party's authority to exercise the discretion.  An "*ultra vires*" act occurs where a party is not authorized to exercise any discretion.  It is an "absence of discretion," not an "abuse of discretion."  An "abuse of discretion" is not an "*ultra vires*" act, nor does it constitute willful misconduct.  Debtor concedes as much by stating it "has no intention of

///
///
///
///
///
///

---

[2] The Plan does specifically provide that the TCR's estimation of the amount of money to be placed in certain funds is subject to review by the bankruptcy court for "abuse of discretion" (Section 11.2.4).  In her December 17 oral ruling, the bankruptcy judge specifically pointed this out in distinguishing and concluding that the TCR's determination of the merits of claims was not subject to review for "abuse of discretion." (Ct. Rec. 2340-1 at p. 64).

**MEMORANDUM OPINION-        5**

'appealing' any such award the TCR had discretion to make." (*Id*.)[3]

Because what the Debtor really asserts is an "absence of discretion" on the part of the TCR to allow particular Future Tort Claims, not an "abuse of discretion," the court finds *In re Celotex Corporation*, 487 F.3d 1320 (11th Cir. 2007), to be inapposite. In *Celotex*, the Eleventh Circuit Court of Appeals held that the processing of property damage claims by a Property Damage Claims Administrator under the Asbestos Property Damage Claims Resolution Procedures (APDCRP) set forth in a Chapter 11 Plan were subject to review by the bankruptcy court "only for an abuse of his discretion under the APDCRP." Under the plan in that case, the bankruptcy court retained jurisdiction for that specific purpose. *Id*. at 1336-37. In the case before this court, the bankruptcy court, under the terms of the Plan, did not retain jurisdiction for the purpose of reviewing the TCR's determination of the merits of a tort claim for an "abuse of discretion." This is consistent with the Plan's requirement that the Plan Trustee pay allowed Future Tort Claims within 30 days after they are finally determined by the TCR. If there were review for "abuse of discretion," all of the TCR's determinations allowing or disallowing claims would be subject to review by the bankruptcy court, rendering the 30 day payment requirement a nullity.

Here, there is no question the bankruptcy court retains jurisdiction to review any alleged "*ultra vires*" determinations of the TCR allowing certain claims which

---

[3] See also Diocese's "Reply Brief Regarding Review Of TCR's Decisions" wherein the Diocese states: "The question before the Court is whether the Court has jurisdiction to hear evidence and determine whether the TCR's actions were ultra vires and in contravention of the Plan's requirements." (Ct. Rec. 2376 in 04-08822-PCW-11 at p. 6); and Diocese's "Reply To Future Claims Representative's Brief On Appeal" (Ct. Rec. 18 at pp. 5-6): "[T]he Diocese is seeking judicial review of whether the TCR acted outside of her authority, and acted in an *ultra vires* manner **by allowing claims that did not qualify under Article 11 and that are expressly excluded by the Plan**." (Emphasis in text).

**MEMORANDUM OPINION-      6**

she had no discretion to allow. Therefore, the question is whether the Debtor alleged any "*ultra vires*" determinations by the TCR and, if so, whether the Debtor was unfairly deprived of an opportunity to present evidence to the bankruptcy court in support of such an allegation.[4]

## B. Were any "*ultra vires*" acts alleged by the Debtor and should the Debtor have been allowed to present evidence to the bankruptcy court regarding alleged "*ultra vires*" acts?

Of the tort claims allowed by the TCR on October 12, 2009, the Debtor "identified six that do not qualify under the terms of the Plan, and which the TCR had no authority to allow." (Debtor's "Brief On Appeal," Ct. Rec. 6 at p. 3). In its "Brief Regarding Judicial Review Of TCR's Decisions" filed with the bankruptcy court at its direction on November 24, 2009, the Debtor elaborated upon the nature of these six claims:

> Of the Future Tort Claims allowed by the TCR, two are precluded by the Bar Date Order; two involve claims against Jesuit clergy of the Oregon Province of the Society of Jesus, for abuse which occurred at a Mission owned and controlled exclusively by the Jesuits; one involves a claim against a nun of the Franciscan Sisters of Perpetual Adoration, a religious order based in La Crosse, Wisconsin, who was not an employee or agent of the Diocese; and one involves a claim against a lay person who was not a priest, employee, or agent of the Diocese.

(Ct. Rec. 2365 in 04-08822-PCW-11 at p. 15).

The Debtor separated these claims into three different categories: 1) "Claims Previously Disallowed by the Court;" 2) "Claims that have nothing to do with the Spokane Diocese;" and 3) "A Claim Barred by the Bar Date Order." (*Id.* at pp. 8-14). The Debtor contended the TCR did "not have the authority or

---

[4] There is nothing in the record indicating the Debtor has alleged anything constituting "willful misconduct" by the TCR.

**MEMORANDUM OPINION-**      7

discretion under the Plan" to allow these claims, and the Debtor was "willing to make an **offer of proof** as to each of the claims allowed by the TCR that she had no authority to allow." (*Id*., emphasis in text). [5] The TCR filed a declaration in response to the Debtor's brief, addressing each of the claims. (Ct. Rec. 2375 in 04-08822-PCW-11). The Debtor moved to strike the declaration. The bankruptcy court denied the motion in part, but also granted it in part, reasoning as follows:

> And the declaration stated that as to one sample claim which was, according to the debtor's brief, allowed by the tort claim reviewer, the declaration qualified that the debtor had simply misread a report submitted by the TCR. The debtor agreed in its supplemental brief it did misread the report, and there is no such example of a claim or hypothetical claim, So, striking the declaration as to that . . . serve[s] no purpose.
>
> And then the debtor cited in its brief an example, or a hypothetical tort claim arising from abuse committed by a minister of another denomination in New York. And the TCR declaration says there is no such claim. And that's certainly, I believe a proper relevant response to an allegation in the brief.
>
> And then the third category of statements in the declarations concerned claims considered by the TCR which were the subject of untimely filed proofs of claim in the underlying bankruptcy proceeding. And, again, this was in response to some arguments made by the debtor in its briefing, that portion of the declaration should be struck, **and the information regarding the basis of an allowance or disallowance of any specific tort claim is really irrelevant for purposes of this controversy that were trying to address today.**

(Ct. Rec. 2430-1 at pp. 50-51)(emphasis added).

The bankruptcy court concluded the Debtor was not seeking to have the court determine whether the TCR was acting "*ultra vires*," but rather seeking to have the court examine the merits of the TCR's determinations which was not authorized by the Plan:

> Now, the debtor's argument is basically that the TCR acts outside her authority if the determination to allow a particular claim is wrong. In other words, she acts outside of her authority to make a bad decision, but she's not

---

[5] In a supplemental brief filed November 30, 2009 (Ct. Rec. 2368 in 04-08822-PCW-11), the Debtor advised that one of the six claims it had identified as being allowed by the TCR, had in fact not been allowed by the TCR.

**MEMORANDUM OPINION-**     8

> acting outside of her authority to make the decision. That's not the law of ultra vires.
>
> The TCR clearly has the authority to make a determination of the future tort claims. Simply because somebody disagrees with the substance of the determination does not render the act of making the determination . . . an act in excess of authority. It's not outside the scope of the TCR's authority to make a determination as to the allowance of a future tort claim whether she is right or wrong in that determination.
>
> An analogy is to a trial court whose primary function is to decide cases. The court doesn't act outside its authority if it renders an erroneous decision. The debtor [has] confused the power to make a decision with a review of the merits of that decision. And their request is, in effect, a request that this court review the merits of the . . . TCR's decision.

(Ct. Rec. 2340-1 at pp. 64-65).

The bankruptcy court correctly concluded it could not review the TCR's decisions on the merits for an abuse of discretion and that the only question was whether the particular claims identified by the Debtor, which had been allowed by the TCR, constituted "*ultra vires*" acts. The Debtor contends the bankruptcy judge ruled she did not have the authority to review any final decision of the TCR, including any decision which was allegedly "*ultra vires*." This court fails to find the bankruptcy judge's decision to have been that broad. Rather, the bankruptcy judge construed the Debtor's challenge to the allowance of certain claims as a challenge to the TCR's exercise of discretion to determine the merits of those claims, not whether the TCR had the authority to exercise discretion and determine the merits in the first instance. It is apparent the bankruptcy judge understood this distinction and ultimately found the Debtor's request was to "examine the merits of [the TCR's] determinations." (Ct. Rec. 2430-1 at p. 63). The bankruptcy judge concluded the Debtor was not challenging the TCR's allowance of any of the claims as being "*ultra vires*."

The critical question is whether the Debtor sufficiently alleged anything constituting "*ultra vires*" decisions on the part of the TCR such that the bankruptcy judge should have allowed the Debtor to present evidence under seal

**MEMORANDUM OPINION-    9**

regarding those decisions.[6]  This court finds the bankruptcy judge correctly concluded the Debtor did not allege any "*ultra vires*" decisions by the TCR and that the bankruptcy judge had a sufficient record before her upon which to arrive at that conclusion, including the "Diocese's Brief Regarding Judicial Review Of TCR's Decisions" and the declaration of the TCR filed in response thereto (Ct. Rec. 2365 and 2375 in 04-08822-PCW-11).

The TCR made clear in her declaration that she had not allowed a claim previously disallowed by the bankruptcy court in contravention of Section 11.8 of the Plan and indeed, the Debtor withdrew this allegation when informed by the TCR that no such claim had been allowed.  The TCR also made clear she had not been presented with any Future Tort Claim against the Diocese "for abuse by a minister of another religious denomination that occurred decades ago in New York."  It is apparent she would not have been authorized to allow such claims and doing so would have been "*ultra vires*."  The TCR then went on to address the claims she had in fact allowed and which were challenged by the Diocese as being "*ultra vires*."  The TCR explained in detail her justification for allowing those claims under particular provisions of the Plan (i.e. Article 2.135, Matrix Protocol 3.8(f), Article 11.7.2.2)  and how the allowance of those claims involved the exercise of her discretion (i.e., determination that nun was a principal of a school in a diocesan parish and therefore "an employee or other agent of the Debtor or any parish" at the time the abuse was committed;  "determination that the janitor was "an employee or other agent of the Debtor or any parish" at the time the abuse was committed; determination that two Society of Jesus priests were agents of

---

[6] It is noted that during the claims determination proceedings before the TCR, the Debtor had the opportunity to provide information to the TCR about any claims and state a position with respect thereto, (Section 11.9 of the Plan).  The Debtor asserts it "provided the TCR with undisputed evidence confirming that certain Future Tort Claims do not satisfy express requirements of the Plan necessary for allowance." (Debtor's "Brief On Appeal," Ct. Rec. 6 at pp. 8-9).

**MEMORANDUM OPINION-          10**

parishes within the Diocese at the time abuse was committed; allowance of claims as timely under the discovery rule articulated in *Cloud v. Summers*, 98 Wn.App. 724, 734-35, 991 P.2d 1169, 1175 (1999)).

Based on this information, the bankruptcy judge had a sufficient record to conclude, and properly concluded, that what the Debtor was challenging was not the TCR's authority to exercise discretion, but the exercise of discretion itself to determine the merits of particular claims based on the application of law and Plan provisions to the facts before her (i.e., who is a "Responsible person" and when has the statute of limitations run on a claim). This explains the bankruptcy judge's ruling that "the information regarding the basis of an allowance or disallowance of any specific tort claim is really irrelevant for purposes of this controversy that were trying to address today."

The bankruptcy judge had a sufficient record to rule upon the Debtor's Ex Parte Motion To Seal. In denying that motion, she did not render an advisory opinion on a motion to enforce the plan which the Debtor says it intended to file if and after the motion to seal was granted.

### III. CONCLUSION

For the reasons set forth above, the following orders of the bankruptcy court are **AFFIRMED**: 1) December 18, 2009 Order Regarding Payment Of Future Claims (Ct. Rec. 2392 in 04-08822-PCW-11); 2) December 18, 2009 Order Granting In Part And Denying In Part The Motion To Strike (Ct. Rec. 2393); and 3) Order Denying Motion To Seal (Ct. Rec. 2394). The District Court Executive shall enter judgment accordingly. Fed. Bank. R. Proc. 8016(a).

**DATED** this ___17th___ day of June, 2010.

*s/Lonny R. Suko*
LONNY R. SUKO
Chief United States District Judge

**MEMORANDUM OPINION-** 11